FILED
2021 Mar-10 AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| JANET HOBBS, | ) | |
| Plaintiff, | ) | |
| vs. | ) | 7:18-cv-02129-LSC |
| U.S. XPRESS, INC. and KURT ALLEN UPDEGRAFF, | ) | |
| Defendants. | ) | |

## Memorandum of Opinion and Order

This case arises from a trucking accident in western Alabama that led to a death and to serious personal injuries. The defendants and the plaintiff have both moved for partial summary judgment. Because many disputes of material fact remain and because material factual disputes fall within "the province of the jury," *cf. Hammer v. Slater*, 20 F.3d 1137, 1143 (11th Cir. 1994), the cross-motions for summary judgment are due to be denied.

I. **Background**[1]

In April 2016, Kurt Allen Updegraff ("Updegraff") applied to work at U.S. Xpress, a large Tennessee-based trucking company. His application listed a commercial driver's license and more than three years of trucking experience.[2] His application also disclosed a 1995 DUI conviction, a 2009 DUI conviction, two suspensions of his driver's license, and one preventable trucking accident in February 2015. Despite Updegraff's convictions and accident history, U.S. Xpress hired him to haul cargo and drive eighteen-wheel tractor-trailers.

Updegraff worked at U.S. Xpress for roughly thirteen months and had four on-the-job accidents. Two of those came in June 2016. While the record reveals few details about those 2016 accidents, the first happened on June 9, 2016, and the second on June 21, 2016. U.S. Xpress's Safety Review Committee investigated both and found that while the first accident was "preventable," the second was "non-preventable." Updegraff's third accident came on April 24, 2017. The Safety Review Committee characterized this third accident as "preventable." Nothing suggests

---

[1] The Court gleans these "facts" from the parties' submissions of facts claimed to be undisputed, the parties' responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. Their inclusion in this Memorandum of Opinion does not signal their veracity. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] Updegraff earned his first commercial driver's license in 2002 upon graduation from the National Truck Driving School in Orange Park, Florida.

U.S. Xpress placed Updegraff on probation or took other corrective action after his first three accidents.

The accident that is the subject of this action occurred in the early morning hours of May 23, 2017. According to several witnesses, Updegraff lost control while traveling south on Interstate 59. He veered from the southbound lane, he crossed the interstate's median, he flipped, and his overturned semi blocked all northbound traffic. Driving northbound at approximately sixty-five miles per hour, Janet Hobbs ("Hobbs") and her husband collided with Updegraff's vehicle. Hobbs suffered a broken neck and other injuries, but thankfully she survived. According to a post-accident report from the Alabama Law Enforcement Agency, Mr. Hobbs "sustained fatal injuries" and died at the scene.

While the details of the May 23 accident itself are mostly undisputed, the parties dispute what *caused* Updegraff to lose control and cross Interstate 59's median. Hobbs blames controlled substances. She believes Updegraff took several prescription medications before the accident, reacted to those medications, and then

fell asleep. A good amount of record evidence supports her theory, such as the following:

- In May 2017, Updegraff held prescriptions for Xanax, Tramadol, Mirtazapine, and other medications. Police found nine prescription bottles in the cab of Updegraff's truck.

- A post-accident toxicology report found Xanax and Tramadol in Updegraff's bloodstream.

- According to Dr. Jason Hudson, a toxicologist formerly employed by the Alabama Department of Forensic Sciences, taking Xanax and Tramadol together has "known side effects of sedation, which [may] impact someone's ability to stay awake and/or be alert."

- A few hours after the accident, Alabama State Trooper Lynn Vice questioned Updegraff in a Tuscaloosa hospital room. Trooper Vice testified that Updegraff "seemed very anxious and panicky." In Trooper Vice's opinion, Updegraff "was under the influence of . . . Xanax when he crashed."

- Updegraff admitted in his deposition that he suffers from a prescription drug "dependency."

The defendants disagree with Hobbs and, citing their own expert's testimony, argue controlled substances did not contribute to the May 23 accident. Given the competing evidence and divergent testimony, the crash's cause remains a question of fact.

The parties also dispute whether Updegraff knew he was susceptible to "losing control" and injuring other drivers in May 2017. Some evidence suggests knowledge and awareness. For example, Updegraff allegedly "blacked out" in 2015

while driving through Charleston, South Carolina, and he did not disclose several prescription medications during his pre-employment medical examination.

Finally, the parties dispute whether U.S. Xpress knew or should of have known about Updegraff's alleged incompetency and unfitness to drive. To argue it had no reason to question his competency, U.S. Xpress points to its vetting process: It hired Updegraff only after a background check, a medical examination, a road test, and a physical examination. U.S. Xpress believes that, given these procedural safeguards, it had no cause to question Updegraff's fitness. To show U.S. Xpress knew about Updegraff unfitness and incompetency, Hobbs cites a pre-accident conversation between Updegraff and U.S. Xpress's dispatcher. At 8:41 PM on May 22, 2017, Updegraff messaged the dispatcher and complained about breathing issues. This conversation followed:

> **Dispatcher:** Is it emergent? Do u need hospital? Let me know ASAP plz.
>
> **Updegraff:** Not an emerg[ency]. I have to get to my doctor and get X-Rays . . . wanted to stay out longer.
>
> **Dispatcher:** So are you going to be okay? Will you be carrying on with this load?
>
> . . .
>
> **Updegraff:** I can't get it there on time. I would repower . . . I don't want to let it get worse out here . . . I'll get it there. Might have to stop a few times.

> **Dispatcher**: I am working now on getting PPLN changed out with planner.
>
> **Updegraff:** Thank you. I hate doing this. I thought it was better. It's really bad at night and in the AM.
>
> **Dispatcher:** U let me know if u need emergency help throughout nite.
>
> **Updegraff:** Thank you. I'll be okay. Just hard to sleep.

Updegraff then took his prescription medications—including Xanax and Tramadol—and went to sleep. He awoke early the next morning and sent one final message before continuing his drive:

> **Updegraff:** I'm back in today. But I have major issues going on this morning . . . Sorry guys, I will let you know once I'm caught up. Be safe out there.

Updegraff made it only a few miles before losing control and crossing the interstate's median.

In 2018, Hobbs sued both Updegraff and U.S. Xpress in federal court. After more than two years of discovery and motion practice, the parties' cross-motions for partial summary judgment are before the Court.

## II. Standard of Review

A successful summary judgment movant shows there is no genuine dispute as to any material fact and that he, she, or it deserves judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists, and summary judgment is

not appropriate, if "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Tellecomms, Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). At summary judgment, district courts "view all evidence" and draw "all justifiable inferences" in the nonmoving party's favor. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). Then we determine "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250–51 (1986).

### III.  Motion for Summary Judgment Filed by Updegraff and U.S. Xpress[3]

Updegraff and U.S. Xpress moved for summary judgment on three counts: Count V (wantonness), Count III (negligent hiring, training, supervision, retention, dispatch, and entrustment), and Count IV (wanton hiring, training, supervision, retention, dispatch, and entrustment). The Court will deny summary judgment on all claims.

---

[3] Because this is a diversity case brought under 28 U.S.C § 1332, this Court applies the substantive law of the forum state—Alabama. *McMahan v. Toto*, 256 F.3d 1120, 1131–32 (11th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

### A. Wantonness

Updegraff moved for summary judgment on Hobbs's wantonness claims because, according to Updegraff, he lacked the requisite mental culpability for wantonness. *Cf. Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1004 (Ala. 1993) (citing *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145 (Ala. 1993) ("Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness. . . ."). Watnonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citing *Bozeman v. Cent. Bank of the S.*, 646 So. 2d 601 (Ala. 1994)) (emphasis in original). It's acting with "reckless disregard of the safety of another." *Ex Parte Dixon Mills Volunteer Fire Dep't, Inc.*, 181 So. 3d 325, 333 (Ala. 2015) (quoting *Phillips ex. rel. Phillips v. United Servs. Auto. Ass'n*, 988 So. 2d 464, 467–68 (Ala. 2015)). Although the "determination [of] whether a defendant's acts constitute wanton conduct depends on the facts in each particular case," *Ex Parte Essary*, 992 So. 2d at 10, some consistent rules emerge from the case law. First, "it is not essential that the defendant should have entertained a specific design or intent to injure the plaintiff." *Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988) (quoting *McNickle v. Stripling*, 67

So. 2d 832, 833 (1953)). Wantonness is knowledge of the risk and intent to act—not intent to harm. *Id.* Second, wantonness claims are fact-intensive and, therefore, usually are unfit for summary judgment. *See Cash v. Caldwell*, 603 So. 2d 1001, 1003 (Ala. 1992) ("Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness.").

With these rules in mind, questions of material fact preclude summary judgment on Hobbs's wantonness claim. Updegraff knew he "ha[d] major issues going on" when he awoke on May 23, 2017, he knew his health issues became "really bad . . . in the AM," he knew he took Xanax and Tramadol the night before, and—viewing the evidence in Hobbs's favor—he knew that just two years before the accident he "blacked out" while driving through South Carolina. Despite knowing all this, Updegraff consciously started his semi and consciously drove down Interstate 59. A jury could consider these and other facts and find Updegraff acted with "reckless disregard of the safety" of other drivers. The jury could find an awareness of risk, an awareness of likely consequences, and an intent to act. *Cf. Thomas v. Heard*, 256 So. 3d 644, 658 (Ala. 2017) (voluntary consumption of prescription drugs before driving may support a wantonness claim); *Lankford v. Mong*, 214 So. 2d 301, 303 (Ala. 1968) (explaining how a driver is guilty of wanton or willful misconduct "in falling asleep while driving . . . [if] he continued to drive in

reckless disregard of premonitory symptoms"). Summary judgment on Hobbs's wantonness claim is therefore due to be denied.

### B. Negligent and Wanton Entrustment

U.S. Xpress also moves for summary judgment on Hobbs's claims for negligent entrustment. A successful negligent entrustment claimant proves five elements: "(1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 412 (2005). U.S. Xpress challenges only elements two and three. According to U.S. Xpress, Updegraff was not an incompetent driver. Even if he was, the argument goes, U.S. Xpress had neither actual nor constructive knowledge of his incompetency.

Under Alabama law "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Id.* at 413–14. Alabama courts use several factors to measure driver competence. Courts consider a driver's formal credentials—his possession or non-possession of a valid driver's license. *See id.* at 413 (a driver's "possession of, or lack of, a valid driver's license" is a relevant but non-dispositive consideration for negligent entrustment). Courts also consider a driver's accident history and driving record. *See Thompson v. Havard*, 235 So. 2d 853, 857 (Ala. 1970) (considering a driver's speeding tickets and

moving violations). And if a driver has a history of driving under the influence, that history weighs heavily in a competency analysis. *Edwards v. Valentine*, 923 So. 2d 315, 323 (Ala. 2005) (considering a driver's "three instances of driving under the influence of alcohol or a controlled substance"); *Redmond v. Self*, 90 So. 2d 238 (Ala. 1956) (two instances of driving under the influence was "evidence sufficient to support a finding by the jury that [the driver] was addicted to the use of intoxicating liquors or beverages").

Hobbs presents a question of fact as to Updegraff's competency. On the one hand, Updegraff graduated from the National Truck Driving School, he held a valid commercial driver's license, and he passed a medical and physical examination before U.S. Xpress hired him. On the other hand he had two DUI convictions, four accidents in the two years preceding the May 2017 accident, and an admitted "dependency" on Xanax and Tramadol. He also had health and breathing issues, at least in the days just before the May 23 accident. A reasonable jury could weigh this competing evidence and find that Updegraff was incompetent to drive the vehicle entrusted to him.

Hobbs also met her burden on the third element of negligent entrustment—the knowledge element. *See Day v. Williams*, 670 So. 2d 914, 916 (Ala. 1995) (explaining how "knowledge by the entrustor of the driver's incompetence is

fundamental to [a] negligent entrustment claim"). For a plaintiff to survive summary judgment on the knowledge element, she must "establish that the defendant knew, or by the exercise of reasonable care, would have known that the entrustee was incompetent" to drive the entrusted vehicle. *Dunaway v. King*, 510 So. 2d 543, 546 (Ala. 1987). Hobbs shouldered this burden. Even if U.S. Xpress was unaware of Updegraff's drug dependency, it was aware of: his preventable accident in February 2015; his preventable accident on June 9, 2016; his non-preventable accident on June 21, 2016; his preventable accident on April 24, 2017; his DUI conviction in 1995; his DUI conviction in 2009; his health issues on May 22, 2017; and his health issues on the morning of May 23, 2017. A reasonable jury considering this evidence could find U.S. Xpress knew that Updegraff was not competent to drive large, cargo-laden tractor-trailers. Hobbs submitted enough evidence on both disputed elements to survive summary judgment.

Like her claim for negligent entrustment, Hobbs's claim for wanton entrustment will survive summary judgment. "In order to establish wanton entrustment, [Hobbs] must show that [U.S. Xpress] entrusted [a tractor-trailer] to [Updegraff] while knowing that that entrustment would likely or probably result in injury to others." *Jones ex rel. Jordan v. Calloway*, 7 So. 3d 310, 317 (Ala. 2008). The abovementioned evidence is sufficient to create a question of material fact as to

wanton entrustment. A jury could consider Updegraff's accident history, his DUI convictions, and his known medical ailments and find that entrusting a tractor-trailer to him "would likely or probably result in injury to others." *Id.*

### C. Negligent and Wanton Hiring, Training, Supervision, and Retention

U.S. Xpress also moved for summary judgment on Hobbs's claim for negligent hiring, training, supervision, and retention. Alabama's Supreme Court outlines the elements of negligent hiring, training, supervision, and retention with the following paragraph:

> In the master and servant relationship, the master is held responsible *for his servant's incompetency* when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon it being established by affirmative proof that *such incompetency* was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

*See, e.g.*, *Voyager Ins. Cos. v. Whitson*, 864 So. 2d 1065, 1073 (Ala. 2009) (quoting *Lane v. Cent. Bank of Ala., N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983)) (emphasis in original). In other words, Hobbs's claim will survive summary judgment if a reasonable jury could find (1) that Updegraff committed an Alabama common-law tort, (2) that U.S. Xpress knew of Updegraff's incompetency or would have known of his incompetency if it had exercised due and proper diligence, and (3) that U.S.

Xpress failed to respond adequately after gaining notice of his incompetency. *See, e.g.*, *Holton v. Bama Lanes Prattville, LLC*, No. 2:17-cv-453-ALB, 2019 WL 6712085, at *3 (M.D. Ala. Dec. 9, 2019); *see also Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001); *cf. Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1309 (11th Cir. 2007).

Viewing all evidence and drawing all justifiable inferences in her favor, Hobbs meets all three elements. As to element one, Updegraff potentially committed two Alabama common-law torts (negligence and wantonness). As to element two, U.S. Xpress had actual knowledge of Updegraff's two DUIs, actual knowledge of his four accidents in two years, and actual knowledge of his "major" medical issues in May 2017. This suggests U.S. Xpress knew or with "due and proper diligence" would have known about Updegraff's incompetence to operate a commercial vehicle on busy highways. As to element three, a reasonable jury could find U.S. Xpress "failed to adequately respond" to Updegraff's incompetence when, with knowledge of his driving record and with knowledge of his breathing issues, it entrusted him with a vehicle on May 23.

Far too many questions remain. Was U.S. Xpress negligent when it hired a driver with two DUIs and a preventable accident? When it continued employing (i.e. retained) him after three accidents in thirteen months? When it required no

additional training after his steady stream of accidents? When it allowed him to keep driving, despite the May 22 and May 23 dispatch messages? The Court leaves these questions to the trier of fact.

Hobbs's claim for wanton hiring, training, supervision, and retention will also survive summary judgment. Given the evidence discussed exhaustively above and the presumption that "wantonness is a question for the jury unless there is a total lack of evidence," *Cash*, 603 So. 2d at 1003, this claim is not appropriate for summary judgment.

### D.  Negligent and Wanton Dispatch

Finally, U.S. Xpress moved for summary judgment on Hobbs's claims for "negligent and wanton dispatch." The allegations Hobbs alleges for "negligent and wanton dispatch" appear to be synonymous with the allegations she alleges for entrustment and for negligent and wanton supervision. The Court—for the reasons explained in the entrustment and supervision analysis above—will deny summary judgment. At trial, however, the Court will instruct the jury that each specific damage is only recoverable once—no matter how numerous the plaintiffs' theories of recovery are. *Cf. Ex Parte Rudolph*, 515 So. 2d 704, 708 (Ala. 1987) (referencing "the basic premise in law that there can be but one recovery for a single injury").

## IV. Motion for Summary Judgment Filed by Hobbs[4]

Hobbs moved for summary judgment on her wantonness claims and on her claims for negligent and wanton hiring, training, supervision, and retention. She also moved for summary judgment on her vicarious liability claim against U.S. Xpress.

For the reasons expressed in Part III the Court will deny summary judgment on Hobbs's wantonness claims and on her various negligence claims. The evidence, once again, cuts both directions. Although Updegraff was aware of his prescription drug use, his breathing issues, and his alleged history of "blacking out" while driving, he had an up-to-date commercial driver's license, a medical clearance, and prescriptions for his medications. And although U.S. Xpress had knowledge of Updegraff's DUI history, his history of preventable accidents, and his medical issues on May 22 and 23, U.S. Xpress investigated Updegraff's background before hiring him, it required medical and physical examinations before entrusting him with company vehicles, and it responded quickly when Updegraff complained to the company's dispatcher. Some evidence suggests culpability and some evidence suggests otherwise. The weight of the competing evidence and the decision of whether one, both, or neither defendant behaved culpably is best left to the trier of

---

[4] Unlike in Part III, the Court here views all evidence and draws "all justifiable inferences" in the defendants' favor. *Anderson*, 477 U.S. at 255; *see Griffis v. Delta Fam.-Care Disability*, 723 F.2d 822, 823–24 (11th Cir. 1984).

fact. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (quoting *Anderson*, 477 U.S. at 245) ("The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

The Court will likewise deny summary judgment on Hobbs's vicarious liability claim against U.S. Xpress. An employer cannot face vicarious liability unless his, her, or its employee engaged in wrongful conduct. *Cf. Copeland v. Samford Univ.*, 68 So. 2d 190, 192–93 (Ala. 1996). Whether Updegraff engaged in wrongful conduct remains a question of fact. With this essential element still in dispute, summary judgment is due to be denied.

## V.  Motion to Exclude

U.S. Xpress and Updegraff moved to exclude the expert testimony of Tommy Sturdivan ("Sturdivan"). Because this Memorandum of Opinion neither relies on nor references Sturdivan's testimony, the Court will moot the Motion to Exclude. The defendants may reassert their Sturdivan-related admissibility arguments in a properly filed motion in limine.

## VI.  Order

For the reasons just explained,

- The Motion for Partial Summary Judgment filed by Updegraff and U.S. Xpress (Doc. 59) is **DENIED.**

- The Motion for Partial Summary Judgment filed by Hobbs (Doc. 62) is **DENIED**.

- The Motion to Exclude Tommy Sturdivan's Expert Testimony (Doc. 61) is **TERMINATED AS MOOT**.

**DONE** and **ORDERED** on March 10, 2021.

                                              L. Scott Coogler
                                     United States District Judge

203323